IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON BARR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 08-866 |
| | ) Judge Nora Barry Fischer |
| THE COUNTY OF CLARION; ADULT | ) |
| PROBATION/PAROLE OFFICER | ) |
| ELIZABETH B. GRAHAM and JOHN | ) |
| DOES 1-5, individually, | ) |
| | ) |
| Defendants, | ) |

**MEMORANDUM OPINION**

**I.    Introduction**

This is a civil rights action initiated by Jason Barr ("Plaintiff") against the County of Clarion ("Clarion"), Probation/Parole Officer Elizabeth B. Graham ("Graham"), and five John Does (collectively "Defendants"). According to Plaintiff's complaint, the five John Does were all employed by Clarion in its Department of Adult Probation and Parole, and "personally involved in the issuance of a bench warrant for and arrest of [Plaintiff]." (Docket No. 1 ¶ 6). Plaintiff has brought the present action pursuant to 42 U.S.C. §§ 1983 and 1988, claiming that his rights under the Fourth, Fifth, and Fourteenth Amendments were violated when the Defendants amended his criminal sentence without proper notice or an opportunity to be heard, causing him to spend "nearly [three] years under illegal and improper supervision, including [over] 180 days in prison." (*Id.* ¶¶ 1, 29).

In Count I of the Complaint, Plaintiff seeks to hold Graham and the five John Does individually liable for their actions leading to the alleged illegal modification of his sentence,

1

which caused his additional supervision and time in jail.  (*Id.* ¶¶ 30-38.)  Count II of the Complaint seeks to hold Defendant Clarion County subject to municipal liability for policies and customs the county "developed and maintained…which caused the deprivation of [Plaintiff's] constitutional rights."  (*Id.* ¶¶ 39-44.)  Finally, Count III of the Complaint seeks to hold Does 1-5 and Clarion County subject to "supervisory liability."  (*Id.* ¶¶ 45-52.)  Defendants have filed a Motion for Summary Judgment (Docket No. 35), arguing that Plaintiff's claims fail as a matter of law.  Upon consideration of the parties' submissions, and for the following reasons, Defendants' motion (Docket No. 35) will be GRANTED.

## II.  Factual Background

The majority of the facts in this matter are agreed to by the parties, as most are a matter of public record stemming from the Plaintiff's legal proceedings.  Unless otherwise indicated, the parties do not contest the following facts.

On October 27, 1998, Plaintiff was convicted of forgery and theft by unlawful taking in the Clarion County Court of Common Pleas.  (Docket Nos. 31 ¶ 1; 37 ¶ 1; 32-2 at 2).  On November 4, 1998, Judge Charles R. Alexander sentenced Plaintiff to seven years of probation for these crimes.  (Docket Nos. 31 ¶ 4; 37 ¶ 4; 32-2 at 2-3).  Plaintiff's probation was subject to various conditions.[1]  (Docket No. 32-6 at 2-3).  Among these conditions, Plaintiff was required to obtain permission from his probation officer prior to changing his residence, to comply with all laws, and to notify his probation officer within 48 hours of any arrest.  (*Id.*).  On July 18, 2001, Plaintiff was arrested in Paint Township, Somerset County for driving under the influence and possession of marijuana.  (Docket Nos. 31 ¶ 10; 37 ¶ 10; 32-8 at 2-3).  On November 21, 2001, the Clarion County Department of Adult Probation and Parole sent Plaintiff a notice

---

[1] Plaintiff does not dispute this fact, but rather disputes this fact's materiality.  (Docket Nos. 31 ¶ 7; 37 ¶ 7).

informing him of violations of his probation, i.e. his DUI arrest.  (*Id*.)  In addition to his DUI/drug possession arrest, Plaintiff violated his probation by failing to: obtain permission prior to changing his residence; notify his probation officer of his arrest; and, pay fines, costs, and restitution imposed by the court.  (*Id.*).

On December 11, 2001, Defendant Graham, Plaintiff's probation officer, informed Plaintiff that the district attorney's office was recommending that Plaintiff's current probation be revoked and he receive a term of imprisonment and an additional five years of probation. (Docket Nos. 31 ¶ 12; 37 ¶ 12; 32-9 at 12).  Prior to Plaintiff's revocation hearing on December 20, 2001, Defendant Graham spoke with the district attorney and Plaintiff's counsel and understood that all parties agreed to Plaintiff receiving five additional years of probation. (Docket Nos.  31 ¶ 14; 37 ¶ 14; 32-5 at 6).  During the *Gagnon* II hearing,[2] the prosecuting attorney read aloud the sentencing recommendations, including the five year probation term and a term of imprisonment not to exceed two years minus one day, with credit for time served, and Plaintiff's attorney agreed with this recommendation.  (Docket No. 32-10 at p. 4, l.15-p. 6, l.2). At the conclusion of the hearing, Judge Arner dictated the Order of Sentence in court, but this dictated order was not part of the hearing transcript.  (*Id.* at p. 7, l.4).  Ultimately, the final written Order of Sentence did not include a term of probation after Plaintiff's prison sentence. (Docket Nos. 31 ¶ 21; 37 ¶ 21; 32-11 at 2-3).

On February 6, 2002, upon noticing that Plaintiff's sentence did not include a probation term following release from prison, Defendant Graham wrote to Judge Arner's stenographer to

---

[2] According to the Supreme Court's holding in *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973), "a parolee is entitled to two hearings…a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision."  This preliminary hearing is known as the *Gagnon* I hearing, while the final revocation hearing is known as the *Gagnon* II hearing.

determine whether or not the probation term was in her notes. (Docket Nos. 31 ¶¶ 22-23, 37 ¶¶ 22-23; 32-13). In response, the stenographer called Graham and told her that her notes indicated that the district attorney recommended a five year consecutive probation term, but it was not included in the order.[3] (Docket Nos. 32-9 at 14). Graham's notes of the *Gagnon* II hearing state that Judge Arner agreed with the Assistant District Attorney's recommendation of revoking probation and imposing a jail sentence "followed by 5 years probation."[4] (*Id.* at 12). According to Defendants, at this time, the Clarion County Court of Common Pleas had a standard practice that when probation officers had questions regarding a probationer, they were to send a memo to the judge and allow him to act upon that information as the judge saw fit. (Docket No. 31 ¶ 25). Plaintiff argues that this practice was "adopted as a custom, practice or policy of Clarion County's Department of Adult Probation and Parole." (Docket No. 37 at ¶ 25). Upon learning that the probation term was in the Assistant District Attorney's recommendation, Graham wrote a letter on February 20, 2002 to Judge Arner bringing the perceived discrepancy to his attention, and asking if he had any objection to signing an amended Order of Sentence that included the five year probation term, which she attached to the memo. (Docket Nos. 31 ¶¶ 27-28; 37 ¶¶ 27-28; 32-15). Judge Arner signed the amended order on February 25, 2002. (Docket Nos. 31 ¶ 29; 37 ¶ 29; 32-16).

While serving this consecutive probation term, Plaintiff was detained twice for probation violations, on November 7, 2005 and July 17, 2006, and he served 188 days in prison as a consequence of these violations. (Docket Nos. 31 ¶¶ 36-38, 40; 37 ¶¶ 36-38, 40). On August 14, 2006, Plaintiff filed a *pro se* Petition to Vacate Illegal Sentence in the Clarion County Court

---

[3] Plaintiff does not dispute that Graham's notes so indicate. Rather, Plaintiff argues that these notes constitute inadmissible hearsay. (Docket No. 37 ¶ 24).

[4] Plaintiff does not dispute that Graham's notes so indicate. Rather, Plaintiff argues that these notes constitute inadmissible hearsay. (*Id.*).

of Common Pleas, which Judge Arner denied. (Docket No. 37-4). On October 10, 2006, Plaintiff again filed a Petition to Vacate Illegal Sentence, this time with the help of the Clarion County Public Defender's Office.[5] (Docket Nos. 31 ¶ 42; 37 ¶ 42; 32-24). Judge Arner granted this petition on October 13, 2006, which reinstated the original Order of Sentence that omitted the consecutive probation term. (Docket No. 31 ¶¶ 45-46; 37 ¶¶ 45-46). In his ruling on this second petition, Judge Arner held that under Pennsylvania law, a sentence cannot be amended after thirty days unless there is a patent or obvious error, which he did not find in the present case. (Docket Nos. 31 ¶ 46; 37 ¶ 46; 32-27 at 3).

### III. Procedural History

Plaintiff filed his Complaint against Defendants on June 24, 2008. (Docket No. 1). Defendants filed their Answer on August 27, 2008. (Docket No. 8). On September 22, the parties agreed to submit to a mediation session conducted by Scott G. Dunlop, Esq.[6] (Docket No. 11). This mediation session was conducted on October 31, 2008, and the parties were unable to reach a settlement. (Docket No. 16). The parties conducted no discovery in preparation for this mediation session and declined to schedule a follow-up session. (*Id.*). The parties later participated in a settlement conference on March 11, 2009 but again were not able to reach a settlement. (Docket No. 31). After four motions to extend discovery were filed, upon two of which both parties agreed, discovery closed on August 3, 2009. (Docket Nos. 19, 21, 25,

---

[5] Defendants claim this is the first time Plaintiff raised any questions about his sentence, but Plaintiff has attached his *pro se* petition to Plaintiff's Concise Statement of Material Facts. (Docket Nos. 31 ¶ 42; 37-4). According to Plaintiff, "Judge Arner denied the PCRA petition, without hearing, on August 25, 2006, noting in his Order, that Barr had thirty (30) days from the date of the Amended Order of February 25, 2002 in which to seek a review." (Docket No. 37-4).

[6] Mr. Dunlop is a partner at Marshall, Dennehey, Warner, Coleman & Goggin, where he has expertise in the areas of Federal Civil Rights Defense, Political Subdivision Tort Claims Defense, and Public Officials Liability. Mr. Dunlop also serves as a third-party neutral in this Court's ADR program.

27). Defendants then filed this Motion for Summary Judgment on September 30, 2009, along with their Brief in Support and Concise Statement of Material Facts. (Docket Nos. 29-32). Plaintiff filed his Reponse on November 1, 2009, along with his Brief in Opposition and Concise Statement of Material Facts. (Docket Nos. 35-37). Thereafter, Defendants filed a Response to Plaintiff's Concise Statement of Material facts on November 10, 2009. (Docket No. 39). Being fully briefed, Defendants' Motion for Summary Judgment is now ripe for disposition.

### IV. Standard of Review

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure of material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a summary judgment motion, the court must "'view the evidence ... through the prism of the substantive evidentiary burden' to determine 'whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not.'" *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, then the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling Delaware Co.*, 998 F.3d

1224, 1230 (3d Cir. 1993).  Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue of fact for trial."  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.2d 639, 643 n. 3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994)).

Moreover, in considering a motion for summary judgment, a district court may not "make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001) (holding that "a court must take the facts in the light most favorable to the nonmoving part, the [plaintiff], and draw all reasonable inferences in their favor") (citation omitted).

V.     Discussion

As noted, Plaintiff claims that Defendants violated his due process rights under the Fourth, Fifth, and Fourteenth Amendments of the Constitution, in violation of 42 U.S.C. § 1983. (Docket No. 1 at ¶¶ 1, 28, 29).  Plaintiff seeks damages to compensate him for "lost wages…pain, anxiety, emotional distress, humiliation, embarrassment and loss of liberty, and…the costs of [probationary] supervision."  (Docket No. 1 at ¶ 29).

Defendants set forth four arguments in support of their motion for summary judgment. First, Defendants submit that there was no due process violation in this case, because Judge Arner merely corrected a "clerical error" and there was no harm done to Plaintiff.  (Docket No. 29 at ¶¶ 25, 30).  Second, Defendants argue that the policy/procedure at issue is attributable to the Court of Common Pleas of Clarion County and Judge Arner, neither of which is a party in the present action.  (*Id.* at ¶¶ 6-14).  If the policies and procedures at issue are not attributable to

Clarion County, then it cannot be subject to municipal liability. (Docket No. 30 at 7-8). Third, Defendants argue that the doctrine of *respondeat superior* is not applicable in a § 1983 claim. (*Id.* at 9). Fourth, Defendants argue that Defendant Graham is entitled to the defense of qualified immunity. (Docket No. 29 at ¶¶ 35-40).[7] The Court will address each of Defendants' arguments in turn.

As set forth in *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989), to properly state a claim under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment's Due Process Clause, the plaintiff must demonstrate: "(1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process."

---

[7] The Court notes an additional defect with Plaintiff's claims, not mentioned by Defendants: they were not timely filed. The Court of Appeals for the Third Circuit has recently reiterated the rule:
> The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. Federal law governs a cause of action's accrual date. Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based. . . . As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. The cause of action accrues even though the full extent of the injury is not known or predictable.

*Kach v. Hose*, 589 F.3d 626, 634-35 (3d Cir. 2009) (internal quotations and citations omitted). Plaintiff avers that he was not notified of his amended sentence when it was imposed on February 25, 2002, while Defendants claim that the amended order was sent to his counsel at the Clarion County Public Defender's Office. (Docket Nos. 1 at ¶ 16; 8 at ¶ 16).
However, it is uncontested that Plaintiff was first detained for violations of the extended term of probation on November 7, 2005. (Docket Nos. 1 at ¶ 17; 8 at ¶ 17). And, Plaintiff avers that he "repeatedly complained that he was not properly under the jurisdiction or supervision of the Defendants at that time." (Docket No. 1 at ¶ 19). Thus, as of November 7, 2005, Plaintiff "knew or should have known of the injury," giving him until November 7, 2007 to initiate a § 1983 claim. The present action, however, was not initiated until June 24, 2008, and is, therefore, time-barred.

Plaintiff has no problem establishing the first, fourth, and fifth elements of his due process claim, and Defendants do not dispute that these elements are present. (Docket No. 31 ¶¶ 6, 38, 40, 46). Thus, this Court need only consider elements (2) and (3): whether the deprivation of Plaintiff's rights was without due process and whether Defendants caused said deprivation. Plaintiff claims that he was deprived of a liberty interest when he was improperly subjected to "the rigors of life under probationary supervision" and time spent in prison as a result of his violations of this "improper probation." (Docket No. 38 at 5). The Supreme Court has held that an improperly imposed criminal sentence violates one's liberty interest in their personal freedom, which is protected by the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Jackson v. Virginia*, 443 U.S. 307 (1979).

I.    *The Alleged Violation of Plaintiff's Due Process Rights*

Plaintiff claims that his due process rights were violated when his sentence was amended after the 30-day period in which Pennsylvania law permits the court to amend a criminal sentence, without notice and an opportunity to be heard. (Docket No. 36 at 10). Under 42 Pa.C.S. § 5505, "a court upon notice to the parties may modify or rescind any order within 30 days after its entry." Plaintiff's initial sentence was ordered on December 20, 2001, and Judge Arner signed the amended Order of Sentence on February 25, 2002, sixty-seven days later. (Docket No. 1 at ¶¶ 9, 13, 14). "Generally, once the thirty-day period is over, the trial court loses the power to alter its orders." *Commonwealth v. Walters*, 814 A.2d 253, 255-56 (Pa. Super. 2002). Outside of this thirty day window provided by Pennsylvania law, a trial court may only amend a sentence "to correct a patent or obvious mistake in a sentence, or in a case of fraud or another circumstance so grave or compelling as to constitute extraordinary cause." *Id.* at 256.

9

When Judge Arner granted Plaintiff's Petition to Vacate Illegal Sentence on February 25, 2002, he did so because he found that the original sentence had been modified after the thirty day window without a patent or obvious mistake or an extraordinary cause, in contravention of Pennsylvania state law. (Docket Nos. 31 ¶ 42-46; 37 ¶ 42-46; 32-27 at 3,6). This alone does not necessarily mean that the modification deprived Plaintiff of his due process rights. "Mere violation of a state statute does not infringe the federal Constitution." *Snowden v. Hughes*, 321 U.S. 1, 11 (1944). Judge Arner did not reach the question of whether Plaintiff had been deprived of his due process rights under the United States Constitution, and, as discussed below, this Court need not do so either. For, even if the Court were to assume, *arguendo*, that the modification did deprive Plaintiff of his due process rights under the United States Constitution, thereby satisfying element (2) of the *Sample v. Diecks* analysis, he cannot show that the actions of these named Defendants caused that supposed deprivation. 885 F.2d at 1113.

Element (3) requires Plaintiff to establish "that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process," which Plaintiff cannot accomplish in this case. *Sample*, 885 F.2d at 1113. As Plaintiff acknowledges, "the ultimate decision to sign the [February 25, 2002] order [adding the term of probation] obviously rests with Judge Arner." (Docket No. 35 at ¶¶ 33-34). Judge Arner had the discretion to agree, disagree, provide notice and/or hold further proceedings upon receipt of Defendant Graham's letter to the court regarding the sentencing discrepancy. Defendant Graham's letter cannot be said to have caused any supposed deprivation of rights when the court's independent action and exercise of discretion to modify the sentence intervened.[8] Furthermore, as discussed below, the

---

[8] Plaintiff argues that "there is no other way to characterize what Graham did except as a motion [governed by] Pennsylvania Rules of Criminal Procedure, Rule 576(B)(1) which requires notice to all parties [and] the court administrator concurrent with the filing of all written motions." (Docket No. 38 at 7). Even if this were the case, it would not make Graham's letter the *cause* of Plaintiff's

10

named Defendants were not responsible for the policy that led Defendant Graham to write to Judge Arner. Thus, Plaintiff's § 1983 due process claim falls short because he cannot demonstrate that Defendants caused the deprivation of Plaintiff's rights. As explained below, the law will not permit this court to hold any of the Defendants liable for this alleged due process violation.

> **II.** *The Policy at Issue in this Case is Not Attributable to Clarion County, and as a Result, Clarion County Cannot Be Subject to Municipal Liability.*

In Count II of his Complaint, Plaintiff seeks to hold Defendant Clarion County directly liable for its "policies or customs which caused the deprivation of Barr's constitutional rights." (Docket No. 1 at ¶¶ 40-44). Plaintiff avers that "the responsible policy-making officials of Clarion knew, or in the exercise of reasonable care should have known, that individual officers of the Department or Office of Adult Probation/Parole for Clarion County had engaged in a pattern and practice" that violated the constitutional rights of persons in Clarion County. (*Id.* at ¶ 42).

In *Monell v. Dept. of Soc. Serv. Of City of New York*, the Supreme Court held that "[m]unicipal liability only attaches when the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" 436 U.S. 658, 694 (1978). In *Collins v. City of Harker Heights, TX*, 503 U.S. 115 (1991), the Supreme Court provided a two-step analysis for cases involving municipal liability. First, the Court must determine "whether plaintiff's harm was caused by a constitutional violation." *Id.* at 120. If this element is satisfied, the Court then must

---

injury since it accurately presented the potential error to the court and the court acted as an intervening cause when it 'ruled' on said 'motion.' *See Ergevary v. Young*, 366 F.3d 238, 251 (3d Cir. 2004)("Where, as here, the judicial officer is provided with the appropriate facts to adjudicate the proceeding but fails to properly apply the governing law or procedures, such error must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983 . . . liability.").

determine if the municipality is responsible for the constitutional violation. *Id.* Having already determined that Plaintiff was deprived of a liberty interest, and assuming *arguendo* that he was deprived of due process, the primary inquiry is whether Clarion County is responsible for the deprivation.

Under § 1983, "there are two ways a plaintiff can establish municipal liability . . . policy or custom." *Watson v. Abington Township*, 478 F.3d 144, 155 (3d Cir. 2007). A plaintiff can demonstrate the existence of a policy "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986))). On the other hand, a plaintiff can demonstrate the existence of a custom "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480). This is done by presenting evidence that an official with final authority as a decisionmaker had knowledge of and acquiesced to the alleged custom. *Watson v. Methacton School District*, 513 F.Supp.2d 360 (E.D. Pa. 2007).

In the present matter, Plaintiff claims that his due process rights were violated by the Probation Office's procedure of communicating case discrepancies to a judge, and the Court's procedure of amending a criminal sentence after the 30-day period. These procedures were not a written policy included in any training materials, and there was no formal proclamation of this practice. (Docket No. 37 at ¶¶ 55-57). Plaintiff instead attempts to argue that this practice constitutes a custom because Ms. Smail, who was in charge of the probation office, knew about the policy and accepted it as an established practice of the probation office. *Id.* at ¶ 51.

However, mere identification of a custom or policy that has some connection to the municipal defendant is not enough to establish municipal liability.  As stated by the Supreme Court in *Monell*, "[t]he plaintiff must also demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged." 436 U.S. at 695.  The plaintiff must "identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered." *Losch*, 736 F.2d at 910.

Here, the probation office's practice or custom of communicating directly with the judge on matters pertaining to a probationer is not attributable to the probation office.  Under 61 Pa.C.S § 6132 and following the holding in *Commonwealth v. Tilghman*, 652 A.2d 390, 391 (Pa. Super. 1995), the local Court of Common Pleas retains jurisdiction over probation and parole for prison sentences of less than two years.  Here, it was not Ms. Smail who adopted this practice of directly communicating with the judge.  Rather, Ms. Smail, who stated in her deposition that she considers Judge Arner to be her boss, followed Judge Arner's orders.  (Docket No. 37-4 at 47). Judge Arner was the "moving force" behind this practice, not Clarion County.  And, Judge Arner and the Court of Common Pleas of Clarion County are agents of the Commonwealth, not Clarion County. 42 Pa.C.S. § 301.  Because the practices at issue are not attributable to Clarion County, but rather, are attributable to the Commonwealth, municipal liability under 42 U.S.C. §§ 1983 and 1988 is not applicable to Defendant Clarion County in this case.

    C.    *The Doctrine of Respondeat Superior Does Not Apply in § 1983 Claims*

In Count III of his Complaint, Plaintiff seeks to impose liability on Defendant Clarion County on a theory of "supervisory liability" stemming from the allegedly unlawful acts of Defendant Graham. (Docket No. 1 at ¶¶ 45-52).  In *Monell*, the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or

13

agents. Instead it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694.

The Supreme Court and Third Circuit have upheld the inapplicability of the *respondeat superior* doctrine in § 1983 cases. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 415 (1997); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984); *Watson v. Abington Township*, 478 F.3d 144, 155 (3d Cir. 2007). Moreover, this rule has been applied in a § 1983 claim against a county probation office for the actions of one of its probation officers. *Gibson v. Adult Probation Parole Dept. of Montgomery County*, Civ. A. No. 1993 WL 313663 at *3 (E.D. Pa. Aug. 13, 1993)(holding that *respondeat superior* is not applicable and does not bind a county probation officer's conduct to the county in a § 1983 claim). Since *respondeat superior* is not a viable theory under 42 U.S.C. § 1983 or 1988, summary judgment is appropriate with regard to Count III of Plaintiff's Complaint.

    D.    *Defendant Graham is Protected by Qualified Immunity.*

In Defendants' Motion for Summary Judgment, Defendants argue that Plaintiff's claim against Defendant Graham is barred by qualified immunity. (Docket No. 30 at 12-13). Qualified immunity protects government officials carrying out discretionary duties from civil liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [government official] conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all,

and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999)(quoting *Conn v. Gabbert*, 526 U.S. 286 (1999)).  A right is clearly established when the state of the law at the time of the incident provides an official "fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Nelson v. Snyder*, 608 F.Supp.2d 615, 627 (M.D. Pa. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986).  As such, "[n]o liability will attach if a reasonable state actor could have believed that the challenged conduct was lawful." *Nelson*, 608 F.Supp.2d at 628.

The only case that Plaintiff cites in support of his position that the qualified immunity defense does not apply is *Walton v. Denlinger*, Civ. A. No. 2007 WL 4615960 (E.D. Pa. Dec. 21, 2007).  In that case, plaintiff claimed his due process rights were violated when the defendant, a clerk in the Lancaster County Court of Common Pleas, did *not* follow an established policy regarding appeals to the Superior Court.  *Id.* at *1.  The policy in question held that if a defendant filed an appeal without the required filing fee or failed to file *in forma pauperis*, the clerk would then forward this information to the judge to see if the judge would grant *in forma pauperis* status *sua sponte*.  *Id.*  If the judge decided not to act *sua sponte*, the clerk would send the filings back to the defendant with the notation that the filing fee needed to be paid or that the defendant needed to file *in forma pauperis*.  *Id.*  In *Walton*, when the judge declined to act *sua sponte*, the defendant clerk did not notify the plaintiff of the filing deficiency.  *Id.*  The court held that good faith qualified immunity did not apply because the defendant knew of the plaintiff's right to an appeal and the court's policy of notifying filers of any deficiencies, but did

not act reasonably in light of the information he possessed at the time. *Id.* at *4. In the present case, Defendant Graham knew of the Judge Arner's policy and followed it by notifying him of the discrepancy between Judge Arner's oral proclamation of sentence and the written order. (Docket No. 32-13 at 3). In light of the information she had at the time she wrote her memo to Judge Arner, it cannot be said that she acted unreasonably.

Rather, Defendant Graham was acting pursuant to her duties as supervisor of Plaintiff's probationary punishment. According to Judge Arner's policy, if "a probation officer questioned anything, [that probation officer] would send a memo to the judge, and he would respond [as he deemed appropriate]." (Docket No. 31 ¶ 25). Additionally, it is not a clear constitutional violation for a probation officer to communicate with a judge regarding a criminal sentence without the presence of the defendant's counsel. *Goldstein v. Delaware Bureau of Adult Corrections*, 931 F.Supp. 284, 297 (D. Del. 1996)(citing *United States v. Belgard*, 894 F.2d 1092 (9th Cir. 1990). "The job of the probation officer is to provide 'as much information as possible in order to enable the [court] to make an informed decision.'" *Id.* "Moreover, the probation officer's suggested findings of fact and sentencing recommendations are not binding on the court, nor do they preclude the court from resolving disputed facts and issues." *Id.* In this case, Defendant Graham, following the orders of Judge Arner, informed him of a possible discrepancy in his sentencing. (Docket No. 32-13 at 35-36). Judge Arner had the discretion to agree, disagree, or hold further proceedings upon receipt of Defendant Graham's memo. As such, Defendant Graham's actions cannot be said to violate a well established statutory or constitutional right, and she is protected by good faith qualified immunity.

E.     *Dismissal of Plaintiff's Claims Against the Five John Does*

Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton County*, 336 Fed.Appx. 248, 250 (3d Cir. 2009). However, if the Plaintiff is unable to ascertain the identities of the John Doe defendants after reasonable discovery, the John Doe defendants must be dismissed. *Scheetz v. Morning Call, Inc.* 130 F.R.D. 34, 37 (E.D. Pa. 1990).

In *Blakeslee*, the Third Circuit held it was not improper for the district court to dismiss the John Doe defendants after the plaintiff had ten months to conduct "extensive discovery" and still could not identify the unnamed defendants. 336 Fed.Appx. at 250. In the present matter, Plaintiff filed his Complaint on June 24, 2008. (Docket No. 1). Discovery concluded on August 3, 2009, more than thirteen months later. (Docket No. 27). Plaintiff had more than ample time to discover the identities of the five John Does, but failed to do so. Accordingly, pursuant to Rule 21, this Court will dismiss the five John Doe Defendants.

## VI. Conclusion

Plaintiff was deprived of a liberty interest without due process. However, this deprivation was not caused by any of the Defendants. Because the policies and procedures at issue in this case are not attributable to Defendant Clarion County, liability cannot be imposed against said Defendant. Additionally, *respondeat superior* is not a proper basis for holding Defendant Clarion County liable for a § 1983 violation. With respect to Plaintiff's claim for individual liability against Defendant Graham, said Defendant is protected by the defense of qualified immunity. Finally, this court dismisses the claims against the five John Does pursuant

to Rule 21 of the Federal Rules of Civil Procedure due to the Plaintiff's inability to ascertain the identities of these unnamed defendants.

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

An appropriate Order follows.

s/ Nora Barry Fischer  
Nora Barry Fischer  
United States District Judge

Dated:          February 23, 2010  
cc/ecf:         All counsel of record.